No. 18,242.

HOWARD ROBINSON *v.* LESLIE L. CLAUSON, ET AL.

(351 P. [2d] 257)

Decided April 18, 1960.

Mr. FRANK DELANEY, for plaintiff in error.

Messrs. PARKISON & STEWART, Mr. CARL W. FULGHUM, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in the same order they appeared in the trial court. We will refer to them as plaintiff and defendants, or by name.

In dispute is the ownership of and right to use 50 cubic feet of water per minute of time evidenced by priority No. 77 in Water District No. 45, Garfield County, Colorado.

In 1888 in a general water adjudication proceeding, the District Court in and for Garfield County by its decree awarded to the Louis L. Reynolds Ditch priority

No. 47 for 40 cubic feet of water per minute of time, and by virtue of the first enlargement of said ditch priority No. 77 for an additional 50 cubic feet of water per minute of time, which decree provided that only fifteen of the total ninety feet awarded said ditch was made absolute; the balance of seventy-five feet was conditional on the future actions of the party entitled to said water in increasing his feasible acreage for irrigation. This decree further provided that the water was to be diverted from Divide Creek through the Louis Reynolds Ditch for the irrigation of lands (not described) and for the benefit of the party lawfully entitled thereto. Louis Reynolds was the claimant to the ditch and the water evidenced by priorities numbered 47 and 77 and was at the time of the decree the owner of 160 acres of land located down stream from the point of diversion of the Louis Reynolds Ditch, and which lands are now owned by the defendants. At the time of the decree no one other than Reynolds had any interest in or claim to the Louis Reynolds Ditch priority No. 47 or priority No. 77.

In 1949 plaintiff acquired title to lands adjacent to Divide Creek. A portion of said lands, alleged to be 134 acres, lying downstream from defendants' lands, was susceptible to irrigation from water diverted from Divide Creek and carried through the Louis Reynolds Ditch as enlarged after the 1888 decree. Plaintiff owned waters diverted from said Divide Creek and carried through said ditch, which waters are evidenced by priorities 118B, 118C and 166N. These priorities are of much later date than Nos. 47 and 77. Defendants claim no interest in 118B, 118C or 166N.

Plaintiff makes no claim of title to the waters evidenced by priority No. 77 by any instrument of conveyance from Reynolds, the appropriator, or from any of his grantees.

Plaintiff's claim of ownership is predicated on:

1. Over 30 years of open, exclusive, adverse use thereof by his predecessors in title.

2. A decree entered by the District Court of Garfield County in 1940, case No. 3334, wherein one W. L. Raley (predecessor in title to plaintiff) was adjudged to be the absolute owner of an undivided ¾ interest in the Louis Reynolds Ditch, all of priority No. 77, and the lands now owned by plaintiff.

3. A verbal agreement entered into in 1912 between the predecessors in interests of the parties hereto whereby it was agreed that plaintiff's predecessors in interest should own and be entitled to a ¾ interest in the Louis Reynolds Ditch and a ¾ interest in all waters awarded to said ditch, being priorities Nos. 47-77-118B-118C and 166N, the remaining ¼ to be the property of defendants' predecessors in interest, which agreement it is alleged was fully complied with from 1912 until 1943.

The defendants claim the water evidenced by priorities Nos. 47 and 77 as remote grantees of Reynolds, the original appropriator, which said priorities, it is alleged, have been made absolute by decree dated December 5, 1938, in case No. 3253 in the District Court of Garfield County. Defendants also claim that they and their predecessors in title have ever since 1888 applied the waters evidenced by said priorities to the irrigation of the lands for which originally appropriated. Defendants allege that the quiet title decree entered in case No. 3334 is void and deny that there was any agreement for the division of waters as alleged by plaintiff. Defendants also plead several other defenses upon which we find it unnecessary to make any pronouncement.

At the conclusion of a three-day trial, the court made detailed findings of fact, resolved the issues in favor of the defendants and dismissed plaintiff's complaint. The plaintiff then filed a motion requesting the trial court to make additional and amended findings in keeping with plaintiff's contentions. This motion was denied, and the plaintiff is here by writ of error seeking reversal.

The trial court found that plaintiff had failed to prove adverse use of the water evidenced by priority No.

77 as alleged by plaintiff. The evidence offered by plaintiff is in many respects vague and unsatisfactory, and not all of his evidence can be harmonized. Defendants' evidence is in sharp conflict with that of plaintiff. Understandably the trial judge in his memorandum of opinion stated that:

"The testimony concerning the use which has been made of the Louis Reynolds Ditch and its water priorities throughout the years and more especially of priority No. 77 in controversy is in irreconcilable conflict * * *."

Such being the state of the evidence, the trial court properly found that the plaintiff's proof was inadequate to establish title by adverse use.

■ Plaintiff's claim that title to the waters evidenced by priority No. 77 was confirmed in W. L. Raley by the 1940 quiet title decree entered in case No. 3334 cannot be sustained. At the time of the filing of this action and at the time of the decree, one Cora Louthan was the record owner of the lands and waters now owned by the defendants Leslie L. Clausen and Lysle B. Clausen. She, for some unexplained reason, was not named as a party defendant. It is true the complaint named as defendants, in addition to those specifically named:

"All unknown persons who claim any interest in and to the subject matter of this action."

Owners of record cannot be classified as unknown persons claiming an interest. The record owner is a known person. The blanket provision seeking to reach unknown persons is wholly ineffective to make Cora Louthan a party to the action. Not being a party, the decree in no manner affected her title.

■ At the time of the quiet title decree, the property now owned by the defendants Helmer Nelson and Mildred Nelson was owned by one John Anton Casper. In the quiet title action J. A. Caspar was named as a defendant and service had by publication. The defendants contend that the quiet title decree entered against J. A. Caspar had no effect whatsoever on the title of John

Anton Casper. The trial court properly held that the decree was void insofar as it purported to affect any of the rights of John Anton Casper. There was no personal service on Casper, and the attempted service by publication failed to confer jurisdiction in the court over him. The general rule is stated in 42 Am. Jur. 86, §99:

"The failure of the publication notice to contain the forename or Christian name of the party is ordinarily held to prevent the court from obtaining jurisdiction over him. * * *."

Illustrative of the requirements of strict compliance with rules governing procurement of jurisdiction by publication is found in the following Colorado cases:

In *Norris v. Kelsey,* 23 C. A. 555, 130 Pac. 1088, it was held that:

" * * * To state that the residence is unknown is not in strict compliance with the statute that requires an affidavit for publication of summons to state that the postoffice address is unknown. * * *."

To the same effect is *Millage v. Richards, et al.,* 52 Colo. 512, 122 Pac. 788.

In *Empire Ranch and Cattle Company v. Coldren,* 51 Colo. 115, 117 Pac. 1005, the court said:

"The decree of the county court of Washington County, purporting to quiet title in the defendant to the land in question, was entered on an attempted service of summons by publication. To obtain an order for such service an affidavit to that end must show, among other things, that the defendant resides out of the state, or that he has departed from the state without intention of returning, or conceals himself to avoid service of process; it must also give his postoffice address, if known, or if unknown, show that fact. The affidavit is barren of any direct statement of non-residence and is silent on the question of the departure of the defendant from the state without intention of returning, or of his concealment to avoid service of process and the matter of postoffice address is not mentioned. The law is settled that to give

the court jurisdiction the requirements of the statute must be strictly complied with. It must contain the showing required by statute, and nothing excuses omissions or insufficient statement. * * *."

In *Bloomer v. Cristler,* 22 C. A. 238, 123 Pac. 966, it is said:

"It seems to be well settled that where the judgment is founded upon substituted service of summons the defendant's name must be correctly given in the notice. The doctrine of *idem sonans,* however, applies to records, such as judgments, dockets, etc., but in each of the next hereinafter cited cases the appellate courts held a judgment void based upon substituted service of process wherein it appeared that the published notice failed to correctly state the name of the defendant."

In *Gibson v. Foster,* 24 C.A. 434, 135 Pac. 121, it was held that a decree purporting to quiet title in plaintiff as against a named defendant *A. L. Deleplane* did not preclude Albert S. Deleplane from asserting his title free from the effect of the quiet title decree. The court said:

" * * * The variance in the name of this defendant is too great to permit jurisdiction of the person, in this instance, in the absence of any appearance, and of any evidence on the subject, except the decree and the judgment roll, including the affidavit and publication of summons. * * *."

The trial court properly held that the quiet title decree upon which plaintiff relies is void insofar as the rights of the defendants are concerned.

Plaintiff also urges as grounds for reversal the fact that the trial court took judicial notice of the original adjudication decree and the decree in case No. 3253, wherein the court, among other things, made priorities Nos. 47 and 77 absolute. Both decrees are of long standing, both entered by the District Court of Garfield County, all parties necessarily predicate their claims on these decrees. We find that in the course of the trial the parties offered testimony as to the contents of the decrees,

the entry thereof and related matters. During the trial and while plaintiff's counsel was seeking to elicit testimony as to the decrees, the trial judge stated:

"The Court will take judicial notice of its own decrees on this ditch. In that way we do not have to have incompetent evidence, or rely upon the recollection of a lay witness."

To this statement plaintiff's counsel responded as follows:

"I am sure that is right, your honor."

 Counsel, having sanctioned the announced proposed action of the trial judge and at the time having voiced no objection or protest thereto, is precluded from protesting for the first time in this court. If the proposal of the trial judge to take judicial notice of the court's decrees was objectionable to counsel or contrary to law, as now urged, then it was counsel's duty to object and point out the impropriety of the court's proposed actions so that the court could pass upon the merits of the objection. The record contains not one word of protest to the court's avowed intention to take judicial notice of its own decrees. Had there been any protest and had the court felt there was any merit therein, counsel for any party could have readily had copies of the decrees entered in evidence. It is evident from the record that the court and all counsel were in complete agreement that the court should take judicial notice of the decrees.

We find it unnecessary to pass upon the propriety of a trial court taking judicial notice of its decrees when done without notice to counsel, or over timely objection of counsel.

The judgment is affirmed.